UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHARLES E. FOGARTY<br><br>Appellant,<br>v.<br><br>CHARLES A. PISTAURO and LR6-A, LLC,<br><br>Appellees. | C.A. No. 08-256 |
| JAMES OTTENBACHER,<br><br>Appellant,<br>v.<br><br>CHARLES A. PISTAURO and LR6-A, LLC,<br><br>Appellees. | C.A. No. 08-278<br><br>CONSOLIDATED |

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Charles E. Fogarty and James Ottenbacher ("Appellants") move to stay a June 4, 2008 order of the Bankruptcy Court granting a Joint Motion for Approval of Compromise presented by LR6-A, LLC ("LR6-A") and the Chapter 7 Trustee of Brushy Brook Development Co., LLC ("Trustee").[1] On August 8, 2008, this Court temporarily

[1] The confusing paper trail following the Bankruptcy Court's June 4, 2008 order is worth summarizing here. Following

granted an emergency motion to stay the order because the foreclosure sale provided for in the challenged compromise was set to occur prior to any hearing of this appeal. As part of this temporary stay pending the Court's review of the order, the foreclosure sale was postponed until October 2, 2008. Upon careful consideration after oral argument and review of the Bankruptcy Court record, the Court finds that Appellants are not likely to succeed on the merits of their appeal. The stay of the June 4, 2008 Bankruptcy Court order is therefore vacated.

## I. BACKGROUND

Appellants are shareholders of Stone Ridge, Inc. ("Stone Ridge"), a Rhode Island Corporation. Stone Ridge has an interest in Debtor Brushy Brook Development Company, LLC. ("Brushy Brook"). Brushy Brook's sole asset was, and still is, its interest in a 375 acre tract of real property in Hopkinton, Rhode Island known as The Reserve at Brushy Brook. In or around 2005, Brushy Brook sold the property to Boulder Brook Development Co.,

---

the order approving the compromise, each Appellant filed pro se requests for reconsideration and a stay, which the Bankruptcy Court denied on June 26, 2008. On July 3, 2008 and July 8, 2008, respectively, Appellants filed Motions for Leave to Appeal and for a Stay Pending Appeal. LR6-A and the Trustee again objected to a stay and further challenged Mr. Fogarty's appeal as procedurally deficient and untimely. All parties agreed that Appellants incorrectly styled their as-of-right appeals as motions for leave to appeal. This Court thus ordered that the motions shall be treated as appeals. By lifting the stay at this stage, however, the Court does not intend to rule on the procedural validity of either appeal, and considers the Trustee and LR6-A to have reserved their rights in that regard.

LLC ("Boulder Brook"). Boulder Brook used two primary mechanisms to finance the transaction: a $2.5 million loan from LR6-A, which then held the first mortgage position on the property, and, as secondary financing, a junior $3.2 million promissory note owed back to Brushy Brook as a form of seller financing.

In August of 2005, its creditors (including Mr. Fogarty and Mr. Ottenbacher) filed an involuntary Chapter 7 petition against Brushy Brook. In August of 2007, Charles Pisaturo, the Brushy Brook Trustee, filed an involuntary petition against Boulder Brook. As the first mortgage holder, LR6-A then moved for relief from the automatic bankruptcy stay and sought to foreclose on the Hopkinton property. In objection, the Trustee, on behalf of the Brushy Brook estate, asserted that the LR6-A loan violated usury laws and should be voided or at least reformed. After a lengthy series of proceedings before the Bankruptcy Court in which the Brushy Brook estate objected to LR6-A's foreclosure effort, LR6-A and the Trustee reached a tentative settlement. Upon objections from Appellants, the Bankruptcy Court rejected this first agreement, which was set forth in a January 25, 2008 Joint Motion for Entry of Consent Order.[2] The Trustee and LR6-A then

---

[2] Attorney John Boyajian represented Mr. Fogarty at this stage of the bankruptcy proceeding, and filed on Mr. Fogarty's behalf a 17-page memorandum objecting to the proposed consent order. Mr. Boyajian participated in an in camera hearing on March 4, 2008 before Judge Votolato with the Trustee's counsel Matthew McGowan to discuss the proposed compromise and the pros and cons of settlement based on the merits (or lack thereof) of

presented to the Bankruptcy Court a Joint Motion for Approval of Compromise on May 8, 2008, with terms apparently more favorable to the Brushy Brook estate.

There are three main aspects to the proposed compromise submitted for approval. First, the LR6-A note secured by its first priority mortgage covering the Brushy Brook real property would be reduced to 18% simple interest on the unpaid balance. Second, LR6-A would be authorized to foreclose on the property in accordance with a protocol attached to the compromise and provided to the Bankruptcy Court. Third, LR6-A would ensure that the Brushy Brook estate would receive at least $100,000 cash after the foreclosure sale. LR6-A agreed to dismiss a separate pending declaratory relief action that it had brought to declare the note valid and enforceable. In exchange, the Trustee would release any claims the Brushy Brook estate may have had against LR6-A, including the usury claim with respect to the note's original interest amount.

Mr. Fogarty again filed a written objection on behalf of the Brushy Brook estate. After LR6-A and the Trustee presented the compromise, Judge Votolato held a conference on May 22, 2008 and heard argument from Mr. Fogarty as to why the settlement was not

---

the debtor estate's potential usury claims against LR6-A. Both attorneys discussed and debated the possible remedies under Massachusetts law, which would govern the original transaction.

in the estate's best interest. Counsel for the Trustee argued why the settlement was fair and reasonable, and Judge Votolato gave his approval. Appellants' challenge in the district court followed, and it is within this framework that the Court now considers whether to stay the underlying Bankruptcy Court order pending resolution of the substantive appeal.

## II. DISCUSSION

A stay pending appeal of a Bankruptcy Court order is governed by the traditional preliminary injunction factors: 1) strong showing of success on the merits; 2) irreparable harm; 3) whether a stay will injure other parties; and 4) the public interest. See In re Elias, 182 Fed. Appx. 3, 4 (1st Cir. 2006). Likelihood of success on the merits is the "sine qua non" of this standard. Acevedo-Garcia v. Vera-Monroig, 296 F.3d 13, 16 (1st Cir. 2002). Appellants' chances at a successful appeal of the compromise approval appear slim. To prevail, Appellants would have to show that the Bankruptcy Court abused its discretion when it approved the compromise between the Trustee and LR6-A. In re ServiSense.com, Inc., 382 F.3d 68, 71 (1st Cir. 2004). Such approvals are within the sound discretion of the Bankruptcy Court, and will not be overturned absent some clear showing that the judge failed to adequately "assess and balance the value of the claim that is being compromised against the value to the estate of the acceptance of the compromise proposal." Jeffrey v.

Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (quoting In re GHR Companies, Inc., 50 B.R. 925, 931 (Bankr. D. Mass. 1985)).

Bankruptcy Rule 9019(a) provides the Bankruptcy Court with the authority to approve a settlement agreement on motion by the trustee and after a hearing with notice given to creditors. In deciding whether to approve the compromise of a claim, the Bankruptcy Court must consider the following factors: 1) the probability of success in the litigation being compromised; 2) the difficulties, if any, to be encountered in the matter of collection; 3) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and 4) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. Jeffrey, 70 F.3d at 185 (citing In re Anolik, 107 B.R. 426, 429 (Bankr. D. Mass. 1989)). Deference should also be given to the trustee's judgment regarding the settlement, provided the trustee can demonstrate that the proposed agreement falls within a "range of reasonableness." In re Whispering Pines Estates, Inc., 370 B.R. 452, 461 (B.A.P. 1st Cir. 2007) (citing In re 110 Beaver St. P'ship., 244 B.R. 185, 187 (Bankr. D. Mass. 2000)).

It is highly unlikely that Appellants will be able to show that the Bankruptcy Court abused its discretion under Bankruptcy Rule 9019(a). The record demonstrates that the Bankruptcy Court appropriately evaluated the facts and analyzed the objections to

settlement. See In re Healthco Int'l. Inc., 136 F.3d 45, 51 (1st Cir. 1998) (the role of a bankruptcy judge approving settlement is not to ". . . decide the numerous questions of law and fact raised by appellants but rather to canvass the issues"). A review of the transcripts from the March 4, 2008 hearing and May 22, 2008 conference satisfies the Court that Judge Votolato understood the issues and carefully considered the relevant factors. Attorney Boyajian amply represented Appellants as objectors to the settlement throughout these proceedings. Attorney Boyajian and, later, Mr. Fogarty appearing pro se vigorously highlighted the potential usury claim against LR6-A and the possibility that a court, applying Massachusetts law, would void the note in its entirety in favor of the debtor estate. Mr. McGowan discussed with Judge Votolato at length the specific Massachusetts case law that would presumably control should the estate move forward with its claims. Judge Votolato questioned Mr. McGowan about the reasonableness of releasing the estate's claims against LR6-A. Mr. McGowan explained that the proposed settlement was the only realistic option for Brushy Brook, and that the remote upside of successful litigation to void the loan did not outweigh the downside of continued expense and delay. Judge Votolato did not act impulsively in crediting the opinion of the Trustee and his counsel.

Appellants fare no better with their argument that the

Bankruptcy Court failed to consider their allegations of fraud and unethical behavior with respect to the underlying LR6-A loan transaction.[3] In addition to the written objections with these allegations, Judge Votolato heard from Mr. Fogarty and his attorney about the possible unclean hands claims that the debtor estate could bring in the future upon discovery that might result in a better recovery than the settlement. Mr. McGowan represented to Judge Votolato and again to this Court that he reviewed thousands of pages of documents in judging the merits of the estate's potential claims and remedies against LR6-A. Judge Votolato in his oral ruling credited the sophistication and hard work of the Trustee and Mr. McGowan. He agreed with the Trustee that the compromise was the only viable path to take; this Court has seen nothing in the record to question Judge Votolato's independent review of the issues, and his acceptance of that recommendation as fair and reasonable.

The Court recognizes Appellants may face financial harm if

[3] While recognizing that Appellants now proceed pro se with their appeal and motions to stay, the Court nonetheless notes their failure to address the legal standard for a stay or specifically challenge any error by Judge Votolato in either their written submissions or at oral argument. Appellants premise any likelihood of success on appeal on a rehashing of the allegations of wrongdoing among the many entities and individuals in play since at least 2005. Appellants offer no authority and minimal argument as to what Judge Votolato got wrong or why the Trustee's credibility in making the decision to settle should be questioned. Instead, they ask this Court to order discovery and re-examine the entire history of this matter, an invitation the Court cannot and will not accept.

the Brushy Brook property is sold. But the Court must weigh this harm against the harm to other parties if the stay remains, and against Appellants' minimal, indeed dismal, chances of success on appeal. See P.R. Hosp. Supply, Inc. v. Boston Scientific Corp., 426 F.3d 503, 507 n.1 (1st Cir. 2005) (quoting Massachusetts standard as similar to federal standard) ("[w]hat matters . . . is not the raw amount of irreparable harm [a] party might conceivably suffer, but rather the risk of such harm in light of the party's chance of success on the merits.")). Moreover, all does not seem lost for Appellants because both they and the Trustee represent that litigation on behalf of the debtor estate continues over related claims, which could result in additional resources for the Brushy Brook estate and its creditors.

On the current record, the Court would be unable to say that Judge Votolato abused his discretion by crediting the Trustee's decision to settle as a exercise of good business judgment. This is especially so given that the Court views Judge Votolato's decision with the understanding that "compromises are favored in bankruptcy." LeBlanc v. Salem, 212 F.3d 632, 635 (1st Cir. 2000) (quoting Hicks, Muse & Co. v. Brandt, 136 F.3d 45, 50 n.5 (1st Cir. 1998)). The Court recognizes the likely impact of this decision in light of the foreclosure sale currently scheduled for October 2, 2008 with which LR6-A, once the stay is lifted, will be able to move forward. The Court, however, cannot continue to

stay the underlying order and delay settlement where Appellants have no likelihood of success on the merits in light of the sufficient basis for Judge Votolato's informed decision.

**III. CONCLUSION**

For the foregoing reasons, the Court DENIES Appellants' motions to stay the Bankruptcy Court's June 4, 2008 order and the Bankruptcy Court's June 26, 2008 order sustaining the objections to Appellants' motion to reconsider. The Court hereby VACATES the temporary stay it imposed on August 8, 2008.

ENTER:

Ronald Smith
Deputy Clerk

IT IS SO ORDERED.

W Smith
William E. Smith
United States District Judge
Date: 8/28/08